**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MTGLQ INVESTORS, L.P.** | ) | **CASE NO.4:04CV742** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THE CITY OF YOUNGSTOWN, ET AL.,** | ) | **MEMORANDUM AND OPINION** |
| | ) | |
| **Defendant and Third-Party Plaintiff** | ) ) ) | |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **J.P. MORGAN CHASE & CO., ET AL.,** | ) | |
| | ) | |
| **Third-Party Defendant** | ) ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff MTGLQ Investors, L.P.'s Motion for Summary Judgment and Defendant The City of Youngstown's Motion for Summary Judgment. For the following reasons, the Court grants Plaintiff's Motion in part and denies Defendant's Motion.

1

**FACTS**

Plaintiff MTGLQ Investors, L.P. ("MTGLQ") filed suit on April 20, 2004. MTGLQ's First Amended Complaint alleges, Defendant Big G and Bank One entered into three separate loan agreements: 1) on April 13, 1995 (Note One) with a maturity date of October 30, 1995, in the amount of One Hundred Seventy Thousand dollars ("$170,000"), (the loan was reaffirmed on May 5, 1995); 2) March 6, 1996, (Note Two) with a maturity date of September 20, 1996, in the amount of Two Hundred Sixty-Four Thousand dollars ("$264,000); and 3) May 26, 1994, (Note Three) (reaffirmed on May 5, 1995), in the amount of One Hundred Fifty Thousand dollars ("$150,000"), whereby Big G promised to pay on or before June 30, 1996. Notes One and Two were guaranteed by Defendant City of Youngstown ("Youngstown")( Guaranty One & Guaranty Two respectively). On June 20, 1996, Youngstown entered into a third guaranty (Guaranty Three) with Bank One on debts owed by Big G to Bank One in the amount of Four Hundred Eleven Thousand dollars ("$411,000"). It is undisputed that Big G defaulted on the loans.

On April 5, 1994, Bank One and Capital Ready entered into two loan agreements. It is undisputed that Capital Ready defaulted on the two loans. On October 30, 2002, Bank One transferred all rights to the Big G and Capital Ready loans to MTGLQ.

This Court has already granted default for MTGLQ and against Big G and Capital Ready on all five notes on September 27, 2004, thereby disposing of Plaintiff's Counts I, II, III, IV, and V. Counts VI, VII and VIII are breach of contract actions against City of Youngstown on the three guaranties still outstanding.

Youngstown subsequently filed a Third-Party Complaint against Bank One alleging failure to honor its letter of credit, breach of contract, conversion, indemnification and an action

2

for an accounting. In granting in part Third-Party Defendant Bank One's Motion to Dismiss, the Court dismissed the failure to honor and conversion actions as outside the applicable statute of limitations.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

## Ohio Revised Code §5705.41

As a threshold issue, the Court must determine if the Guaranties were subject to the requirements of Ohio Revised Code §5705.41. The question of the applicability of O.R.C. §5705.41 was absent from the parties briefs and pleadings. As failure to comply with the requirements of O.R.C. §5705.41 voids any contract involving municipality expenditures, on February 21, 2006, the Court ordered the parties to produce the certificates of the financial officer of the City of Youngstown for each Guaranty, or brief its inapplicability. On March 3,

2006, the parties provided their briefs. The City of Youngstown argued that no certificates were issued on any of the Guaranties, rendering them void by application of law. MTGLQ and Bank One allege a certificate was not required.

O.R.C. §5705.41 states in pertinent part:

No subdivision or taxing unit shall:

(D)(1) Except as otherwise provided in division (D)(2) of this section and section 5705.44 of the Revised Code, **make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation or, in the case of a continuing contract to be performed in whole or in part in an ensuing fiscal year, the amount required to meet the obligation in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. This certificate need be signed only by the subdivision's fiscal officer. Every such contract made without such a certificate shall be void, and no warrant shall be issued in payment of any amount due thereon**. If no certificate is furnished as required, upon receipt by the taxing authority of the subdivision or taxing unit of a certificate of the fiscal officer stating that there was at the time of the making of such contract or order and at the time of the execution of such certificate a sufficient sum appropriated for the purpose of such contract and in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances, such taxing authority may authorize the drawing of a warrant in payment of amounts due upon such contract, but such resolution or ordinance shall be passed within thirty days after the taxing authority receives such certificate; provided that, if the amount involved is less than one hundred dollars in the case of counties or three thousand dollars in the case of all other subdivisions or taxing units, the fiscal officer may authorize it to be paid without such affirmation of the taxing authority of the subdivision or taxing unit, if such expenditure is otherwise valid.

Therefore, in the absence of a certificate signed by the fiscal officer, the issue is whether the Guaranties are void.

There is no dispute the City of Youngstown never provided certificates pursuant to any of the Guaranties. Therefore, the Court finds the Guaranties void unless some exception applies.

The loans in question were to support minority businesses in Youngstown doing economic development projects. The failure of the City of Youngstown to pay the Guaranties

appears to be the result of the denial of anticipated federal funds.

### **Plaintiff's Arguments**

1) Pursuant to O.R.C. 5705.42:

> When the United States government or the state or any department, division, agency, authority, or unit thereof makes a grant or loan of money to any political subdivision of this state to aid in paying the cost of any program, activity, or function of such subdivision, or enters into an agreement with the subdivision for the making of any such grant or loan of money, the amount thereof is deemed appropriated for such purpose by the taxing authority of the subdivision as provided by law and shall be recorded as such by the fiscal officer of the subdivision, and is deemed in process of collection within the meaning of section 5705.41 of the Revised Code.

According to Plaintiff and Third-Party Defendant, when a guaranty is supported by federal funds, no certificate of the fiscal officer is needed. Guaranty One for $170,000 states eighty percent of the loan amount is guarantied by the City of Youngstown from its Minority Business Enterprise Program and "upon receipt of funds from the United States Department of Housing and Urban Development Block Grant Program." Therefore, the Guaranty of the $170,000 did not require a certificate signed by the fiscal officer and any amounts due and owing remain due and owing.

Guaranty Two and Guaranty Three both state the funds will come from Youngstown's 975 Fund. The 975 Fund is a "Program Income Account established by the city in order to segregate monies due to the Community Development Block Grant program versus monies that would be general obligations or general fund monies to the City of Youngstown." (David Bozanich affidavit pg. 19) (City of Youngstown fiscal director). Guaranties Two and Three do not state that the 975 fund is dependant on federal dollars. Furthermore, in the deposition of David Bozanich, he repeatedly denies HUD funds were to be used in the 975 fund. (Bozanich affidavit pg. 92-93). MTGLQ argues the 975 Fund consisted of revenues generated from

5

Youngstown's community development projects funded by HUD however, no HUD money went into the 975 Fund. In the case of the *City of Toledo v. First Star Bank,* 2004 WL 2341392, *12 (Ohio App. 6th Dist. 2004), the Court held, "when a municipality is entitled to a grant from the federal government, such as the Community Development Block Grants in this case, 'the amount thereof is deemed appropriated for such purpose by the taxing authority of the subdivision as provided by law.'" In the absence of federal funds being used to secure the obligation on the Guaranties there is no federal funds exception for failure to certify Guaranties Two the Three.

### **Failure to Plead a Condition Precedent**

Plaintiff argues when certification is required it must be pled as a condition precedent to contractual liability. Federal Rule of Civil Procedure 9(C) states, " In pleading, the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance of a condition or occurrence shall be made specifically and with particularity." Plaintiff offers the case of *Satterfield v. Adams County*, No. 95CA611, 1996 WL 655789, at *8, (4th Dist. App. Nov. 6, 1996) which interpreted the nearly identical language of Ohio Civil Rules of Procedure to mean that failure of a party to invoke the certification issue in its pleadings constitutes an admission of compliance with O.R.C. §5705.41. Citing the *Lathrop Co., v. City of Toledo,* 5 Ohio St.2d 165, (1966). As City of Youngstown failed to plead a condition precedent in its Amended Answer and failed to plead the certification issue in its motion for summary judgment, they are deemed to have conceded compliance with O.R.C. §5705.41.

Also, O.R.C. §5705.41 is not applicable when the funds at issue are not derived directly from taxation and cause no deficit in the general fund. *Jones v. City of Middleton,* 59 Oh. Law

Abs. 329, (Oh. Comm. Pl. 1948). The testimony of the City of Youngstown's financial director does not indicate that the 975 Fund includes tax revenue. Therefore, O.R.C. §5705.41 does not apply to preliminarily relieve the City of Youngstown from its alleged obligations.

## ISSUES

For purposes of clarity the Court will refer to the guaranty of the loan in the amount of $170,000 as Guaranty One and the guaranty of the loan in the amount of $264,000 as Guaranty Two. (The parties do not use the same numbering system for delineating the two guaranties).

The remaining issues in Plaintiff MTGLQ's First Amended Complaint involve the breach of the guaranties provided by Youngstown. Plaintiff MTGLQ seeks summary judgment on Guaranty Two in the amount of $264,000 plus interest. Plaintiff argues the Guaranty was properly executed on March 6, 1996. Section 2.1 and 2.2 of Guaranty Two provides in pertinent part:

> 2.1- The Guarantor {Youngstown} hereby guaranties the payment of the unpaid balance of the Loan to the Bank upon the occurrence of an Event of Default as defined in the Loan Agreement. All payments by the Guarantor shall be paid in lawful money of the United States of America. Any payment under this Guaranty shall be made by Guarantor from its Fund 975 Program Income Account.
>
> 2.2- So long as any sums remain due and owing on the Loan, the Guarantor shall irrevocably encumber Two Hundred Sixty Four Thousand Dollars ($264,000) of the funds appropriated to the Fund 975. A copy of said encumbrances shall be provided to the Bank.

It is undisputed Youngstown never encumbered $264,000 in its 975 Fund as required under the terms of Guaranty Two. It is also undisputed that Big G defaulted on the underlying loan.

### Youngstown's Defenses to Guaranty Two

7

Youngstown argues it is not liable on Guaranty Two because payment of the Guaranty was limited to funds from the 975 Fund. David Bozanich, finance director of the City of Youngstown, attests that Youngstown "intended for payments on Guaranty #1[1] to only be paid from Youngstown's Fund 975 Program Income Account ("Fund 975") if and when Youngstown appropriated money to Fund 975 for that express purpose." Mr. Bozanich further attests that Fund 975 currently has "little to no money."

Youngstown also argues that it is not liable on Guaranties One and Two because Bank One breached the Guaranties by offsetting monies owed by Youngstown to Bank One under the Guaranties with funds, in the amount of Four Hundred Twenty-Two Thousand Three Hundred Eighty-Four dollars and Ninety-Three cents ($422,384.93), available to Youngstown through an irrevocable letter of credit. On April 8, 1998, demand was made on the letter of credit by Youngstown to Bank One and again on April 29, 1998. On May 7, 1998, Bank One, in a letter, to Youngstown, stated that it had offset the letter of credit against monies owed on the Guaranties to Bank One by Youngstown. Youngstown argues, as the express terms of the Guaranties required any payment on Guaranty Two come from Youngstown's 975 Fund, the offset violated the terms of the Guaranty.

Youngstown next argues that the doctrine of laches precludes MTGLQ from recovering monies on the Guaranties. After Bank One's letter to Youngstown on May 7, 1998, requesting payment on the Guaranties, Youngstown alleges, Bank One took no action until MTGLQ filed suit on April 20, 2004. After nearly six years, Youngstown believed that Bank One had abandoned its alleged rights and therefore, Youngstown did not pursue its alleged rights under

---

[1] Guaranty Two by the Court's numbering.

8

the letter of credit.

Finally, Youngstown argues MTGLQ failed to make proper demand for payment on the Guaranties. Youngstown alleges the demand failed to refer to Guaranty One, demands payment of monies not owed and demands interest not owed. As Youngstown allegedly was not in default prior to the demand letter of June 3, 2003, no interest may be charged up to the date of the demand letter.

Youngstown argues it is not obligated to pay interest owed by Big G on the underlying loans as it was not a party to the loan agreements. The Guaranties contain no provision for payment of interest.

Finally, Youngstown argues that no interest is owed on Guaranties One and Two because a subsequent loan from Bank One to Big G in the amount of seventy five thousand dollars and, guaranteed by Youngstown, contains language not found in Guaranties One and Two guaranteeing the unpaid balance and accrued interest.

## **Plaintiff's Supplemental Motion for Summary Judgment**

Plaintiff's supplemental motion for summary judgment, filed after its First Amended Complaint, added additional guaranties. Plaintiff argues City of Youngstown owes "at least two hundred fifty-two thousand six hundred fifteen dollars and seven cents" on the Guaranties. This calculation is derived from the total amount of monies owed by Big G to Bank One at the time of default (in excess of Six Hundred Seventy-Five Thousand dollars, calculated by adding the $411,000 Guaranty and the $264,000 Guaranty). The supplemental Motion makes no mention of the $170,000 Guaranty, nor does it appear to be a factor in the remaining balance allegedly owed MTGLQ, thereby presenting this Court with some question on whether the balance of Guaranty

9

One has been paid.

Youngstown furthers argues that Loan One, the underlying loan guaranteed by Guaranty One, was altered in the reaffirmation and therefore, the Guaranty no longer applies.  MTGLQ argues the fundamental terms of the loan were not altered (i.e. principal, interest and maturity date) and therefore, constitute no change in the obligation owed by Youngstown.

Youngstown, in its supplemental brief in opposition, states MTGLQ has failed to establish the current amount owed by Youngstown.  Youngstown relies on the testimony of Mr. Joseph Manley, a former Bank One employee.  MTGLQ derives its amounts owed from Mr. Manley's testimony.  Mr. Manley left Bank One's employ in September of 2001.  As Bank One did not assign its rights to MTGLQ until October of 2002, Youngstown argues that Mr. Manley would not possess knowledge of any payments made by Youngstown to Bank One on the loans.  Youngstown does not state, nor presents any evidence that any payments were made on the Guaranties after Mr. Manley left Bank One's employ.  Youngstown also argues Guaranty Three is fundamentally different from Guaranties One and Two as it covered numerous debts owed Bank One by Big G, each presumably, with its own interest rate. Therefore, it is impossible to determine the interest owed on Guaranty Three.

MTGLQ, in its Reply argues, Youngstown admitted liability on the $264,000 Guaranty in bankruptcy court during the bankruptcy case of Big G principal Greg Tyson.  In a proof of claim, Youngstown stated, "in the event the City of Youngstown is required to honor its guarantee and make payment to Bank One......the sum of $264,000, or so much thereof as may be required by Bank One, Youngstown N.A. representing the remaining principal owed, caused by a default in the terms and conditions of the loan from Bank One Youngstown N.A. to Big G Construction,

10

Inc." MTGLQ argues this proof of claim by Youngstown constitutes a judicial admission on Guaranty Two.

Also, MTGLQ argues the evidence shows the set off did not pertain to the $264,000 loan.

MTGLQ also argues the plain language of the Guaranties do not require demand be made as the Guaranties state Bank One could enforce the Guaranties upon default "without further demand or notice".

Finally, MTGLQ states that Youngstown's set off argument is an affirmative defense that Youngstown failed to assert in its Answer and therefore, precludes them from offering it as a defense on summary judgment.

## **ANALYSIS**

The Court finds there is no dispute over the validity of the Guaranties themselves. No one attacks the formation, construction or terms (with the exception of interest owed). The Guaranties are supported by Ordinances authorizing the Board of Control to enter into the Guaranties and further state that funds will be available. Also, the Guaranties are supported by a letter from City of Youngstown's counsel stating the Guaranties comply with state and local statutes. Therefore, the Court finds the Guaranties are valid and represent mutually enforceable promises.

### **Guaranty Two**

Having found the parties entered into a binding contract ratified by both sides, the Court finds that Youngstown is obligated under the express terms of the Guaranty Agreement to pay funds due and owing on Guaranty Two.

The Court finds persuasive the Sixth Circuit's holding in *A.L. Pickens Co., Inc.,, v.*

*Youngstown Sheet & Tube Co.,* 650 F.2d 118, 121-122 (6th Cir. 1981).

(W)here a person is obligated to make a payment out of particular funds, there is an implied obligation that the person liable will do nothing to prevent performance of the contract. If the fund is to be produced by the efforts of the obligor, or to result from his acts, he is under a duty to exercise reasonable care and diligence to produce the fund or to bring about the result. And, if it be shown that the party obligated has prevented the creation of the conditions under which the payment would be due, without fault on the part of the other party, he is estopped to avail himself of a situation brought about by his own wrong. An obligation of mutual good faith and fair dealing is imposed by law because of the contractual relations of the parties.

Youngstown agreed, by the express language of its contract with Bank One, to pay any unpaid amounts on Loan Two from its 975 Fund.  It further agreed to encumber $264,000 appropriated to the 975 Fund.  The evidence before this Court shows that monies were and are continually appropriated to the 975 Fund and the Ordinance regarding these Guaranties expressly stated funds would be available in the 975 Fund. Youngstown agreed to specifically encumber/reserve $264,000 of the 975 Fund; Youngstown failed to do so.  Therefore, the Court finds that Youngstown breached its contractual obligation and is therefore, estopped, pursuant to *Pickens*, from denying its obligation due to its own breach.

Guaranty Three contains similar language to Guaranty Two in terms of events of default interest and demand for payment.  Guaranty Three requires the funds come from the same 975 Fund.  Therefore, the same reasoning of Guaranty Two applies to Guaranty Three on Youngstown's failure to encumber the 975 Fund.

As the source of funding Guaranty One did not involve the 975 Fund, there is no issue of failure to appropriate.  In fact, as the funds were from federal sources, they are deemed appropriated pursuant to O.R.C. §5705.42.

### **Offset**

The Court also finds that Bank One was entitled to offset funds due and owing.[2] As Plaintiff correctly asserts, Bank One's only obligation to Youngstown, under the terms of the Guaranties, was to loan money to Big G.  As the undisputed testimony demonstrates Bank One did loan the funds, it did not breach any contractual obligation under the Guaranties.  Bank One's right to set off is recognized under Ohio law.  *Daugherty v. Cent. Trust Co.*, 28 Ohio St. 3d 441, 446 (1986).   There are certain prerequisites for set off.  First, there must be mutuality of obligation between the bank and the depositer.  Second, the funds must not be on deposit in a special purpose account.  *Chickerneo v. Society Nat'l Bank,* 42 Ohio St.2d 315, 318 (1979).  The terms of the letter of credit and Guaranties demonstrate mutuality of obligation. Youngstown has offered no evidence, nor has it argued, the offset funds were in a special purpose account. Therefore, as City of Youngstown failed to pay on its obligations pursuant to the Guaranties, Bank One had a right to set off monies from other accounts of Youngstown on the outstanding debts under the Guaranties.

**Laches**

"Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a "presumption of laches." This principle "presumes" that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2 362, 365 (6th Cir. 1985).  As there is no dispute regarding the timeliness of filing this action, the Court finds that Defendants laches defense is not applicable.  The apparent "stalemate" that occurred between Youngstown and

---

[2] Defendant did raise the affirmative defense of payment in its Amended Answer, rendering Plaintiff's argument that Defendant failed to affirmatively plead payment moot.

Bank One in pursuing these Guaranties does not create an unjust result simply because one side chose to pursue its claims within the statute of limitations period. Nor does this Court find that there was agreement of the parties to walk away from their mutual obligations. The Court does recognize that both parties acted outside the parameters of normal business practice in the continued loans provided to the serial defaulting companies Big G and Capital Ready and in waiting years to address the alleged breaches now before the Court. However, as MTGLQ has brought its action within the applicable statute of limitations period, the Court does not find this delay unreasonable. Therefore, the Court denies Youngstown's motion under the doctrine of laches.

## Improper or Insufficient Demand

Each of the three Guaranties allows the Bank to proceed against the Guarantor upon default, without further demand or notice. However, the evidence demonstrates that on June 3, 2003, Plaintiff made written demand on the Guaranties via letter. The City of Youngstown argues the demand was improper as it failed to address the $170,000 loan and demands interest that is not owed.

Guaranties One and Two obligate Defendant to pay on the $170,000 loan and the $264,000 loan. The Court finds that Defendants own representative David Bozanich, in his affidavit, expressly states in paragraph 6, "on June 3, 2003, MTGLQ Investors, L.P. ("Investors") made a demand on Youngstown for payment of both principal and interest on Guarantees #1 and 2..." Therefore, Defendant is estopped from arguing they never received a demand on the $170,000 Guaranty. The letter expressly demands payment on the $264,000 Guaranty and the $411,000 Guaranty. Therefore, the Court finds demand was made that gave

14

sufficient notice to Youngstown as to the Guaranties in question.

### **Reaffirmation of Loan One**

The reaffirmation of the $170,000 loan did not increase the obligation of Defendant and therefore, does not abrogate Defendant's liability on Guaranty One.

### **Demand by Bank One**

The Court finds that demand was made on the Guaranties by Bank One in 1996 and 1997.

### **Interest**

The express language of Section 4.2(a) of Guaranties One, Two and Three states that Youngstown will pay "the whole amount under the Loan Agreement, the whole amount of the then outstanding principal balance of the Loan and any unpaid interest thereon...". Under the plain language of Section 4.2(a), the Court finds Defendant owes unpaid interest on the underlying Loan Agreements.

### **Conclusion**

There are references throughout the briefs and evidentiary materials to additional loans and apparent guaranties. However, as Plaintiff has moved on only three Guaranties, the Court has restricted its ruling to those claims contained in Plaintiff's Complaint and has numbered the Guaranties using Plaintiff's numbering system. The Court finds there are genuine issues of fact as to the current balances owed on the principal amounts of each Guaranty and the interest accrued.

Therefore, the Court grants summary judgment in favor of Plaintiff and against Defendant on both Plaintiff and Defendant's Motions for Summary Judgment. The Court will

15

require additional briefs and supporting evidentiary materials on the remaining unpaid balances owed under each Guaranty, including interest rates on each of the Loans supported by the Guaranties.  Briefs shall be due no later than April 17, 2006.

      IT IS SO ORDERED.


| March 15, 2006 | /s/ Christopher A. Boyko |
|---|---|
| Date | CHRISTOPHER A. BOYKO |
| | United States District Judge |