**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MTGLQ INVESTORS, L.P.** | ) | **CASE NO.4:04CV742** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THE CITY OF YOUNGSTOWN,** | ) | **MEMORANDUM AND OPINION** |
| **ET AL.,** | ) | |
| **Defendant and** | ) | |
| **Third-Party** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **J.P. MORGAN CHASE & CO., ET AL.,** | ) | |
| | ) | |
| **Third-Party** | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

        This matter is before the Court on Third-Party Defendants' J.P. Morgan Chase & Co. and

Bank One N.A. Motion for Summary Judgment.  For the following reasons, the Court grants

Third-Party Defendants' Motion in part and denies in part.

**FACTS**

        Plaintiff MTGLQ Investors, L.P. ("MTGLQ") filed suit on April 20, 2004.  MTGLQ's

First Amended Complaint alleges Defendant  Big G and Bank One entered into three separate

1

loan agreements: 1) April 13, 1995 (Note One) with a maturity date of October 30, 1995, in the amount of One Hundred Seventy Thousand dollars ("$170,000"), (the loan was reaffirmed on May 5, 1995); 2)  March 6, 1996, (Note Two) with a maturity date of September 20, 1996, in the amount of Two Hundred Sixty-Four Thousand dollars ("$264,000); and 3) May 26, 1994, (Note Three) (reaffirmed on May 5, 1995), in the amount of One Hundred Fifty Thousand dollars ("$150,000"),  whereby Big G promised to pay on or before June 30, 1996.  Notes One and Two were guaranteed by Defendant City of Youngstown ("Youngstown")( Guaranty One & Guaranty Two respectively).  On June 20, 1996, Youngstown entered into a third guaranty (Guaranty Three) with Bank One on debts owed by Big G to Bank One in the amount of Four Hundred Eleven Thousand dollars("$411,000").  It is undisputed that Big G defaulted on the loans.

On April 5, 1994, Bank One and Capital Ready entered into two loan agreements.  It is undisputed that Capital Ready defaulted on the two loans. On October 30, 2002, Bank One transferred all rights to the Big G and Capital Ready loans to MTGLQ.

This Court has already granted default for MTGLQ and against Big G and Capital Ready on all five notes on September 27, 2004, thereby disposing of Plaintiff's Counts I, II, III, IV, and V.  Counts VI, VII and VIII are breach of contract actions against City of Youngstown on the three guaranties still outstanding.

Youngstown subsequently filed a Third-Party Complaint against Bank One, alleging failure to honor its letter of credit, breach of contract, conversion, indemnification and an action for an accounting.  In granting in part, Third-Party Defendant Bank One's Motion to Dismiss, the Court dismissed the failure to honor and conversion actions as outside the applicable statute of limitations.

2

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986).  An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial.  *Id.*  When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial.  *Id.*  However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

For purposes of clarity, the Court adopts the Loan and Guaranty numerical designation of Plaintiff MTGLQ in its First Amended Complaint.  The $170,000 loan and Guaranty are Loan One and Guaranty One as they occurred first in time.  The $264,000 Loan and Guaranty are Loan Two and Guaranty Two, respectively.

## Breach of Contract

Youngstown argues Bank One and its successor, J.P. Morgan Chase & Co., breached Guaranties One and Two when it offset funds due and owing Youngstown, under the Letter of Credit, against the matured obligations owed under the Guaranties. Guaranty Two specifically limited payment of the guaranteed amounts to funds encumbered in Youngstown's 975 Fund. On April 8, 1998, demand was made on the letter of credit by Youngstown to Bank One and

3

again on April 29, 1998.  On May 7, 1998, Bank One, in a letter, to Youngstown, stated that it

had offset the letter of credit against monies owed on the Guaranties to Bank One by

Youngstown.  Youngstown argues as the express terms of the Guaranties required any payment

on Guaranty Two come from Youngstown's 975 Fund, the offset violated the terms of the

Guaranty.

Section 2.1 and 2.2 of Guaranty Two provides in pertinent part:

2.1- The Guarantor {Youngstown} hereby guaranties the payment of the unpaid
balance of the Loan to the Bank upon the occurrence of an Event of Default as
defined in the Loan Agreement.  All payments by the Guarantor shall be paid
in lawful money of the United States of America.  Any payment under this
Guaranty shall be made by Guarantor from its Fund 975 Program Income
Account.

2.2- So long as any sums remain due and owing on the Loan, the Guarantor shall
irrevocably encumber Two Hundred Sixty Four Thousand Dollars ($264,000) of
the funds appropriated to the Fund 975.  A copy of said encumbrances shall be
provided to the Bank.

It is undisputed Youngstown never encumbered $264,000 in its 975 Fund as required

under the terms of  Guaranty Two.  It is also undisputed that Big G defaulted on the underlying

loan.  Guaranty One does not contain the clause limiting payment on the Guaranty to monies

held in the 975 Fund.

**<u>Applicable Statute of Limitations</u>**

The Court has previously held that an action on a Letter of Credit is subject to the six-

year statute of limitations found in Ohio Revised Code §1109.  Plaintiff's claim for breach of

contract is an action on the breach of the Guaranties.  These are subject to the fifteen-year statute

of limitations for written contracts under Ohio Revised Code § 2305.06.  The Court finds

Youngstown's breach of contract action is dependent on the express terms of the Guaranties and

4

is not dependent on the Letter of Credit.

The Court finds persuasive the Sixth Circuit's holding in *A.L. Pickens Co., Inc., v. Youngstown Sheet & Tube Co.,* 650 F.2d 118, 121-122 (6th Cir. 1981).

(W)here a person is obligated to make a payment out of particular funds, there is an implied obligation that the person liable will do nothing to prevent performance of the contract. If the fund is to be produced by the efforts of the obligor, or to result from his acts, he is under a duty to exercise reasonable care and diligence to produce the fund or to bring about the result. And, if it be shown that the party obligated has prevented the creation of the conditions under which the payment would be due, without fault on the part of the other party, he is estopped to avail himself of a situation brought about by his own wrong. An obligation of mutual good faith and fair dealing is imposed by law because of the contractual relations of the parties.

Youngstown agreed, by the express language of its contract with Bank One, to pay any unpaid amounts on Loan Two from its 975 Fund.  It further agreed to encumber $264,000 appropriated to the 975 Fund.  The evidence before this Court shows that monies were and are continually appropriated to the 975 Fund and the Ordinance regarding these Guaranties expressly stated funds would be available in the 975 Fund. Youngstown agreed to specifically encumber/reserve $264,000 of the 975 Fund; Youngstown failed to do so.  Therefore, the Court finds that Youngstown breached its contractual obligation and is therefore, estopped, pursuant to *Pickens*, from denying its obligation due to its own breach.

Furthermore, the language of Guaranties One and Two states:

Section 4.3.  In case any one or more Events of Default shall occur, the Bank at any time may proceed to protect and enforce its rights or remedies either by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, in the Note or in any document or instrument delivered in connection with or pursuant to this Agreement of the Loan Agreement, or to enforce the payment of the Loan or may exercise any other legal or equitable right or remedy now or hereafter existing at law or in equity or by statute.

**Offset**

5

Ohio common law permits Bank One to offset funds due and owing.  Bank One's only obligation to Youngstown, under the terms of the Guaranties, was to loan money to Big G.  As the undisputed testimony demonstrates Bank One did loan the funds, it did not breach any contractual obligations owed Youngstown under the Guaranties.  Bank One's right to set off is recognized under Ohio law.  *Daugherty v. Cent. Trust Co.*, 28 Ohio St. 3d 441, 446 (1986).  There are certain prerequisites for set off.  First, there must be mutuality of obligation between the bank and the depositer.  Second, the funds must not be on deposit in a special purpose account.  *Chickerneo v. Society Nat'l Bank,* 42 Ohio St.2d 315, 318 (1979). Youngstown does not argue lack of mutuality of obligation. Youngstown has offered no evidence, nor has it argued, the offset funds were in a special purpose account.   Therefore, because Youngstown failed to pay on its obligations pursuant to the Guaranties, Bank One had a right to set off monies from other accounts of Youngstown on the outstanding debts under the Guaranties.

The evidence before the Court demonstrates that Bank One did make demand on the Guaranties.  The testimony of Joseph Manley, a Bank One representative, states that demand was made on the Guaranties and Youngstown refused to pay.  In addition, Youngstown's own representative, David Bozanich, in his affidavit (para. 20 & 21) attests that Bank One did demand payment on the Guaranties in 1996 and 1997. The letters attached to Mr. Bozanich's affidavit further evidence ongoing negotiations to resolve the outstanding debt owed by Youngstown on the underlying loans.  Youngstown has offered no evidence that it performed its obligations under the Guaranties once demand was made.  Rather, the evidence demonstrates that the sums owed on the Guaranties have not been paid.

Therefore, the Court grants summary judgment for Bank One and against Youngstown on

6

Youngstown's breach of contract claim.

## Laches

"Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.' This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2 362, 365 (6th Cir. 1985). The Court has determined that MTGLQ's First Amended Complaint was timely filed and Bank One's assignment of its rights on the Guaranties to MTGLQ was within the statutory time limit, therefore, Plaintiff's laches defense is not applicable. The apparent "stalemate" that occurred between Youngstown and Bank One in pursuing collection on the Guaranties and the Letter of Credit does not create an unjust result simply because one side chose to pursue its claims within the statute of limitations period. Nor does this Court find that there was agreement by the parties to walk away from their separate claims. The Court does recognize both parties acted outside the parameters of normal business practice in Bank One's ongoing issuing of loans to the serial defaulting companies Big G and Capital Ready and in waiting years to address the alleged breaches now before the Court. However, as Bank One assigned its rights on the Guaranties within the applicable statute of limitations period, the Court does not find this delay unreasonable. Therefore, the Court holds that Youngstown's laches defense does not apply.

## INDEMNIFICATION

Youngstown's Amended Third-Party Complaint alleges a cause of action for Indemnification. The Court held, in its Order of March 2, 2005, Youngstown's Indemnification claim arose out of an implied contract theory. "Indemnity arises from contract, expressed or

7

implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement." *Heritage Mutual Ins. Co. v. Stevens,* 92 Oh. Misc.2d 9 (Oh. Comm Pl. 1996), q*uoting Traveler's Indemn. Co. v. Trowbridge,* 41 Ohio St.2d 11 (1975). "The burden is on the party seeking indemnity to prove that he or she is entitled to it." *Heritage,* at 14, citing *Cameron Mut. Ins. Co. of Missouri v. Bouse*, 635 S.W.2d 488 (Mo.App.1982).

The Court finds the express contracts between Youngstown and Bank One do not contain indemnification agreements that would permit recovery by Youngstown against Bank One.  The Court further finds there is no evidence of an implied contract for indemnification between the parties.  Finally, the Court finds there is no evidence that Bank One is liable or owes indemnification for the amounts owed MTGLQ by Youngstown for Youngstown's failure to pay under the Guaranties.  Youngstown's evidence of a "de facto" settlement agreement fails to demonstrate any meeting of the minds sufficient to support an implied contract.  Youngstown's only evidence is the period of time Bank One waited to assign its claims to MTGLQ.  This esoteric evidence, based on assumption, manifestly fails to demonstrate any implied contract.  Nor has Youngstown proved Bank One is primarily liable for the losses incurred by Youngstown.  On the contrary, the Court finds that Youngstown is liable for its own failure to comply with the express terms of the Guaranties in question.

Therefore, the Court grants summary judgment for Bank One and against Youngstown on Youngstown's Indemnification claim.

As Bank One has not moved for judgment on Youngstown's claim for an Accounting, the Court will not address this claim.

Therefore, the Court grants Bank One's Motion for Summary Judgment on

8

Youngstown's claims for breach of contract and indemnification.

IT IS SO ORDERED.


March 17, 2006                              s/ Christopher A. Boyko
Date                                      CHRISTOPHER A. BOYKO
                                          United States District Judge